**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Case No. _____ |
| | : |
| v. | : **JURY TRIAL DEMANDED** |
| | : |
| WELLCARE HEALTH PLANS, INC., RICHARD C. BREON, KENNETH A. BURDICK, AMY COMPTON-PHILLIPS, H. JAMES DALLAS, KEVIN F. HICKEY, BOBBY JINDAL, CHRISTIAN P. MICHALIK, GLENN D. STEELE, JR., WILLIAM L. TRUBECK, KATHLEEN E. WALSH, and PAUL E. WEAVER, | : : : : : : : : |
| Defendants. | : |

---

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against WellCare Health Plans, Inc. ("WellCare or the "Company") and the members WellCare's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of WellCare by Centene Corporation and its affiliates ("Centene"). Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on May 3, 2019 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.

2. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Centene will acquire WellCare through the merger of its wholly-owned subsidiary, Wellington Merger Sub I, Inc. ("Merger Sub I") with and into WellCare. WellCare will survive the merger and become a direct wholly owned subsidiary of Centene. In addition, immediately following the completion of the merger, WellCare will merge with and into WellCare's other wholly-owned subsidiary, Wellington Merger Sub II, Inc. ("Merger Sub II"), with Merger Sub II surviving as a wholly owned subsidiary of Centene (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each WellCare common share issued and outstanding will be converted into the right to receive $120.00 in cash and 3.38 shares of Centene common stock, valuing WellCare at $305.39 per share based on the closing price of Centene common stock on March 26, 2019 (the "Merger Consideration"). Upon completion of the merger, former WellCare stockholders will own approximately 29% of the then outstanding Centene common stock, based on the number of shares and stock-based awards of Centene and WellCare outstanding as of March 26, 2019.

3. The consideration WellCare stockholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common stockholders of the Company. Defendants have now asked WellCare's stockholders to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete and

misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning, among other things, (i) WellCare's and Centene's financial projections, relied upon by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Goldman Sachs; and (iii) WellCare insider's potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as WellCare stockholders need such information in order to cast a fully-informed vote in connection with the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to WellCare's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant is incorporated in the State of Delaware and therefore in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because WellCare in incorporated in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of WellCare common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Richard C. Breon has been a member of the Board since 2013.

11. Individual Defendant Kenneth A. Burdick ("Burdick") has served as a member of the Board since June 2014, and as the Company's Chief Executive Officer since January 2015, and was the Company's President and Chief Operating Officer from June 2014 to January 2015.

12. Individual Defendant Amy Compton-Phillips has served as a member of the Board since May 2018.

13. Individual Defendant H. James Dallas has served as a member of the Board since 2016.

14. Individual Defendant Kevin F. Hickey has served as a member of the Board since 2002.

15. Individual Defendant Bobby Jindal has served as a member of the Board since 2018.

16. Individual Defendant Christian P. Michalik served as a member of the Board since 2002 and was named as the Chairman of the Board in March 2015.

17. Individual Defendant Glenn D. Steele, Jr. has served as a member of the Board since 2009 and will not seek re-appointment at this year's Annual Meeting of the Shareholders.

18. Individual Defendant William L. Trubeck has served as a member of the Board since 2010.

19. Individual Defendant Kathleen E. Walsh has served as a member of the Board since May 2018.

20. Individual Defendant Paul E. Weaver has served as a member of the Board since 2010.

21. Defendant WellCare is incorporated in Delaware and maintains its principal offices at 8735 Henderson Road, Renaissance One, Tampa, Florida 33634. The Company's common stock trades on the New York Stock Exchange under the symbol "WCG."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction Undervalues WellCare**

24. WellCare focuses on government-sponsored managed care services, primarily through Medicaid, Medicare Advantage (MA) and Medicare Prescription Drug Plans (PDPs), to families, children, seniors and individuals with medical needs. The Company operates in three segments: Medicaid Health Plans, Medicare Health Plans and Medicare PDPs.

25. On March 27, 2019, the Company and Centene jointly announced the Proposed Transaction:

> ST. LOUIS and TAMPA, Fla., March 27, 2019 /PRNewswire/ -- Centene Corporation (NYSE: CNC) ("Centene") and WellCare Health Plans, Inc. (NYSE: WCG) ("WellCare") today announced that Centene will acquire WellCare in a cash and stock transaction for $305.39 per share based on Centene's closing stock price on

5

March 26, 2019 for a total enterprise value of $17.3 billion pursuant to the terms of a definitive merger agreement. The transaction, which has been unanimously approved by the Boards of both companies, will create a premier healthcare enterprise focused on government-sponsored healthcare programs and a leader in Medicaid, Medicare and the Health Insurance Marketplace.

Centene and WellCare are two high-performing companies with decades of experience serving a broad range of states and large government programs. Together, the combined company will have meaningful product diversification and the opportunity to better serve members, help them achieve better health outcomes and drive growth. WellCare brings to Centene a high-quality Medicare platform and further extends Centene's robust Medicaid offerings. The combination will enable the combined company to provide access to more comprehensive and differentiated solutions across more markets with a continued focus on affordable, high-quality, culturally-sensitive healthcare services. The enterprise would have approximately 22 million members across all 50 states in the U.S. The enterprise would also be expected to have estimated pro forma 2019 revenues of approximately $97 billion and $5 billion in EBITDA, based on the most recent 2019 outlooks publicly reported by both companies.

\* \* \*

**Transaction Terms and Financing**

Under the terms of the merger agreement, WellCare shareholders will receive a fixed exchange ratio of 3.38 shares of Centene common stock and $120 in cash for each share of WellCare common stock. Based on Centene's closing stock price on March 26, 2019, the implied cash and stock consideration to be received by WellCare shareholders is $305.39 per share. The cash and stock consideration represents an approximately 21.0% premium to WellCare shareholders based on the 30-day volume weighted average closing stock price ("VWAP") of WellCare prior to signing and an approximately 32.1% premium based on the closing stock price of WellCare on March 26, 2019.

Upon completion of the transaction, Centene shareholders will own approximately 71% of the combined entity, with WellCare shareholders owning approximately 29%.

The transaction is not contingent upon financing. Centene intends to primarily fund the cash portion of the acquisition through debt

financing, with Barclays providing an $8.35 billion financing commitment. Upon closing, Centene expects its debt-to-capital ratio to be approximately 40%, and intends to use its strong earnings and cash flows to achieve its targeted debt-to-capital ratio in the mid-to-upper 30% range within 12 to 18 months post close.

The transaction is subject to approval by Centene and WellCare shareholders. The transaction is also conditioned on clearance under the Hart-Scott Rodino Act, receipt of required state regulatory approvals and other customary closing conditions. Centene and WellCare expect to complete the transaction in the first half of 2020.

**Organization and Management**

The board of the combined company will consist of 11 members, nine of whom will be from the board of Centene and two of whom will be from the board of WellCare. After the close of the transaction, Michael Neidorff will lead the combined company as Chairman and Chief Executive Officer. Ken Burdick and Drew Asher are expected to join the Centene senior management team in new positions created as a result of the acquisition.

The combined company will be headquartered in St. Louis, the location of Centene's headquarters, with operations throughout the country, and will continue to support substantial operations in WellCare's home state of Florida consistent with the size of the business, as part of its commitment to a strong local approach.

**Advisors**

Allen & Company LLC, Barclays, Evercore and J.P. Morgan Securities LLC are serving as financial advisors to Centene and Skadden, Arps, Slate, Meagher & Flom LLP is serving as its legal counsel. Goldman Sachs is serving as financial advisor to WellCare and Kirkland & Ellis LLP is serving as its legal counsel.

26. The Merger Consideration undervalues the Company's shares in light of its recent financial performance and prospects for future growth. More specifically, on April 30, 2019, WellCare announced stellar first quarter 2019 results:

**Key Highlights**

- GAAP and adjusted total revenue of $6.8 billion and $6.7 billion for the first quarter of 2019 increased 45.5 percent and 47.9 percent respectively, compared with the first quarter of 2018.

- GAAP and adjusted Medicaid Health Plans revenue of $4.5 billion and $4.4 billion for the first quarter of 2019 increased 59.2 and 63.7 percent, respectively, compared with the first quarter of 2018.

- Medicare Health Plans revenue of $1.8 billion for the first quarter of 2019 increased 18.4 percent compared with the first quarter of 2018.

- Medicare PDP membership was approximately 1.6 million as of March 31, 2019, and increased by approximately 557,000 members, or 51.9 percent, compared with March 31, 2018.

- GAAP and adjusted SG&A ratios for the first quarter of 2019 decreased approximately 20 basis points and 50 basis points, respectively, compared with the first quarter of 2018.

- GAAP net income margin of 2.2 percent was consistent with the first quarter of 2018 and adjusted net income margin of 2.8 percent increased by 30 basis points compared with the first quarter of 2018.

27. Accordingly, the Company is well-positioned for financial growth and the Merger Consideration fails to adequately compensate Company stockholders by cutting off their ability to benefit from the Company's continued growth.

28. It is therefore imperative that WellCare's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.** **Conflicts of Interest in the Proposed Transaction**

29. The Board along with certain Company's executive officers are conflicted because they have secured unique benefits for themselves from the Proposed Transaction not shared with the public stockholders.

30. Two members of the WellCare's Board will join the board of the newly formed company.

31. Defendant Burdick will join the senior management team of the newly formed company.

C. **The Materially Incomplete and Misleading Registration Statement**

32. On May 3, 2019, WellCare and Centene jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Financial Projections*

33. The Registration Statement omits material information regarding the Company's financial projections and the valuation analyses performed by Goldman Sachs, the disclosure of which is material because it provides stockholders with a basis to project the future financial performance of the target company, and allows stockholders to better understand the analyses performed by the financial advisor in support of its fairness opinion of the transaction.

34. The Registration Statement discloses that projections were prepared by WellCare management and Centene and provided to the Board (the "Projections"). The Projections were

relied upon by the Company's financial advisor, Goldman Sachs, in connection with its valuation analyses performed in support of its fairness opinion.

35. With respect to the *Centene Standalone Forecasts*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Total Revenue, (2) Adjusted Net Income; (3) Adjusted Diluted Earnings Per Share; (4) EBITDA, and (5) Unlevered Free Cash Flow, but fails to disclose (i) the line items used to calculate these non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

36. With respect to the *WellCare Standalone Forecasts*, the Registration Statement provides values for non-GAAP financial metrics such as (1) Total Revenue, (2) Adjusted EBITDA, (3) Adjusted Net Income; and (4) Adjusted EPS, but fails to disclose (i) the line items used to calculate these non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

37. With respect to the *WellCare Cash Flow Forecasts*, the Registration Statement provides values for non-GAAP financial metrics such as (1) Taxable Income, (2) Net Operating Profit After Tax, and (3) Unlevered Free Cash Flow, but fails to disclose (i) the line items used to calculate these non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

38. With respect to the *Pro Forma Combined Company Forecasts*, the Registration Statement provides values for non-GAAP financial metrics such as (1) Pro Forma Total Revenue, (2) Pro Forma EBITDA, (3) Pro Forma Taxable Income, (4) Pro Forma Net Operating Profit After

Tax, and (5) Pro Forma Unlevered Free Cash Flow, but fails to disclose (i) the line items used to calculate these non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

39. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

40. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

41. Thus, to cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the Registration Statement not misleading.

*Financial Analyses*

42. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis – WellCare Standalone*, the Registration Statement fails to disclose: (i) the specific inputs and assumptions used to calculate the illustrative discount rate of 7.8%; and (ii) the separate implied values per share calculated by Goldman Sachs for each of calendar years 2020 to 2023.

43. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis – Value to WellCare Shareholders*, the Registration Statement fails to disclose: (i) the specific inputs and assumptions used to calculate the illustrative discount rate of 7.8%; and (ii) the range of theoretical future equity values per share for the pro forma company as of January 1 of each of calendar years 2020 and 2021.

44. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis – WellCare Standalone*, the Registration Statement fails to disclose: (i) the specific inputs and assumptions used to calculate the illustrative discount rate of 7.00% to 8.25%; (ii) the Company's illustrative terminal values; (iii) the Company's cost of long-term debt; (iv) the Company's beta, in addition to the inputs and assumptions underlying the calculation of the Company's beta; and (v) the Company's net debt as of December 31, 2018.

45. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis – Pro Forma Value Per Share to WellCare Shareholders*, the Registration Statement fails to disclose: (i) the specific inputs and assumptions used to calculate the illustrative discount rate of 7.00% to

8.25%; (ii) the Company's illustrative terminal values for the pro forma company; and (iii) the estimated total number of fully diluted outstanding shares of the pro forma combined company.

46. With respect to Goldman Sachs' *Selected Transactions Analysis*, the Registration Statement fails to disclose the individually observed forward price/earnings ratios for each of the selected transactions used by Goldman Sachs in its analysis, and whether Goldman Sachs performed any benchmarking analysis for the Company in relation to the target entities in the selected transactions used in analysis, and, if so, the scope of such analysis.

47. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact

necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

50. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

51. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

52. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

53. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of WellCare within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of WellCare, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of WellCare, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of WellCare, and, therefore, is presumed to have had the

power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

58. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 7, 2019          **RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*